# JS-6

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## SOUTHERN DIVISION

| | |
|---|---|
| **TRANG CHE, on behalf of herself and all others similarly situated,** <br><br> **Plaintiffs,** <br><br> **vs.** <br><br> **AURORA LOAN SERVICES, LLC.; and DOES 1 through 10, inclusive,** <br><br> **Defendants.** | **Case No.: SACV 11-01458-CJC(RNBx)** <br><br><br> **ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |

## I. INTRODUCTION

Plaintiff Trang Che, on behalf of herself and other similarly situated plaintiffs, brings this action against Defendant Aurora Loan Servicing, LLC ("Aurora") for violation of § 1641(g) of the Truth In Lending Act ("TILA") and California's Unfair

Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200 et seq.  For the reasons stated below, the Court GRANTS Aurora's motion for summary judgment.[1]

## II.  BACKGROUND

On February 23, 2005, Ms. Che took out a $316,000 loan with Lehman Brothers Bank.  (Compl. ¶ 19.)  The loan was secured by Ms. Che's property, located at 87 Fallingstar, Irvine CA 92514, in a deed of trust.  (*See* Dkt. No. 1.)  According to the deed of trust, the Mortgage Electronic Registering Service ("MERS") held legal title to the deed of trust.  (Def. Mot. at 13.)  On December 4, 2010, Ms. Che filed for bankruptcy protection.  (Compl. ¶ 21.)  On January 7, 2011, a corporate assignment of the Deed of Trust was completed by MERS to Aurora.  (Rice Decl. ¶ 9.)  On March 31, 2011, Aurora moved the bankruptcy court for relief from the automatic stay on the ground that it held a deed of trust on Ms. Che's Fallingstar property.  (Compl. ¶ 22.)  The foreclosure on Ms. Che's property took place on October 5, 2011.  (Compl. ¶ 34.)  While Aurora is currently in possession of Ms. Che's original promissory note, the owner of Ms. Che's loan is HSBC Bank USA.  (Def. Mot. at 13.)

On September 21, 2011, Ms. Che filed suit against Aurora, alleging violations of § 1641(g) of TILA and California's UCL.  (*See* Dkt. No. 1.)  On January 6, 2012, Ms. Che moved *ex parte* for an issuance of a temporary restraining order and an order to show cause why a preliminary injunction should not be granted to enjoin Aurora from locking out Ms. Che from her Fallingstar home, pursuant to a Notice to Vacate by Monday, January 9, 2012 at 6:01 a.m., which was purportedly received by Ms. Che by regular mail on January 6, 2012, along with a writ of possession.  (Dkt. No. 23.)  The Court denied the

---

[1] Having read and considered the papers presented by the parties, the Court finds this matter appropriate for disposition without a hearing.  *See* Fed. R. Civ. P. 78; Local Rule 7-15.  Accordingly, the hearing set for March 19, 2012, at 1:30 p.m. is hereby vacated and off calendar.

application.  (Ct. Order, Dkt. No. 25, Jan. 6, 2012.)  On December 13, 2011, Aurora moved to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).  (Dkt. No. 17.)  Aurora filed several amendments to the motion.  (Dkt. Nos. 18, 19.)  Ms. Che opposed the motion on December 29, 2011, and Aurora filed a reply on January 13, 2012.  (Dkt. Nos. 21, 26.)  Ms. Che also filed a supplemental brief in support of her opposition on January 13, 2012.  (Dkt. No. 27.)  The main thrust of Aurora's argument was that Ms. Che's Complaint should be dismissed because it is not a creditor but a servicer of Ms. Che's loan, and as such, Aurora is excepted from liability under TILA.  Additionally, because Ms. Che's UCL claim is premised on a faulty TILA claim, Aurora argued that Ms. Che's UCL claim also fails.  Ms. Che opposed the motion on the primary ground that Aurora became a creditor or assignee of her loan, as evidenced by the Assignment of the Deed of Trust attached by Aurora in its motion for relief from the stay in the bankruptcy proceeding.  Finding that the essential facts of the case—*i.e.*, whether Aurora is a creditor or servicer of Ms. Che's loan—may be determined by evidence already in the parties' control and that Ms. Che's claims primarily raise legal issues as opposed to factual ones, the Court converted Aurora's motion to dismiss to a motion for summary judgment.  On February 14, 2012, Aurora submitted its motion for summary judgment.[2]

## III.  ANALYSIS

Summary judgment is proper if the evidence before the Court "shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a

---

[2]  On February 7, 2012, Ms. Che filed suit against Aurora in Orange County Superior Court alleging claims for quiet title/wrongful foreclosure and unfair and unlawful practices.  (*See* 8:12-cv-00225-CJC-RNB, Dkt. No. 1.)  Simultaneously, Ms. Che sought and received a Temporary Restraining Order ("TRO") and Injunction to prevent Aurora from locking Ms. Che out of her home.  (*Id.*)  On February 10, 2012, Aurora removed the case to federal court.  (*Id.*)  After the expiration of the state court TRO, Ms. Che filed an *ex parte* application for this Court to issue an order continuing the TRO.  On February 27, 2012, this Court denied Ms. Che's *ex parte* application to continue the TRO.

matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A factual issue is "genuine" when there is sufficient evidence such that a reasonable trier of fact could resolve the issue in the non-movant's favor, and an issue is "material" when its resolution might affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The moving party bears the initial burden of demonstrating either that there are no genuine material issues or that the opposing party lacks sufficient evidence to carry its burden of persuasion at trial. *Celotex Corp.*, 477 U.S. at 325; *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630-31 (9th Cir. 1987). Once this burden has been met, the party resisting the motion "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256. In considering a motion for summary judgment, the court must examine all the evidence in the light most favorable to the non moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). The court does not make credibility determinations, nor does it weigh conflicting evidence. *Eastman Kodak Co. v. Image Tech. Servs., Inc.*, 504 U.S. 451, 456 (1992).

## A.  Alleged Violation of § 1641(g) of the Truth In Lending Act

Section 1641(g) of the TILA provides that "not later than 30 days after the date on which a mortgage loan is sold or otherwise transferred or assigned to a third party, the creditor that is the new owner or assignee of the debt shall notify the borrower in writing of such transfer. . . ." Under the TILA, the term creditor refers to those who regularly extend credit and to whom the debt arising from the credit is initially payable. 15 U.S.C. § 1602(f).[3] A "servicer" for purposes of the TILA is "the person responsible for

---

[3] 15 U.S.C. § 1602(f) ("The term 'creditor' refers only to a person who both (1) regularly extends, whether in connection with loans, sales of property or services, or otherwise, consumer credit which is payable by agreement in more than four installments or for which the payment of a finance charge is or may be required, and (2) is the person to whom the debt arising from the consumer credit transaction is

servicing of a loan (including the person who makes or holds a loan if such person also services the loan)."  12 U.S.C. § 2605(i)(2).

Aurora argues that as a loan servicer it is not subject to liability under the TILA. (Def. Mot. at 16.)  In support of this argument, Aurora points to a number of recent federal district court decisions which have held that loan servicers are exempt from liability under the TILA.  (*Id.* at 16–17.)  Aurora further contends that its assignment of Ms. Che's loan does nothing to create liability under § 1641(g).  (Def. Mot. at 17.) Aurora notes that a servicer is not an assignee for purposes of liability under TILA "on the basis of an assignment of [an] obligation from the creditor or another assignee to the servicer solely for the administrative convenience of the servicer in servicing the obligation." 15 U.S.C. § 1641(f)(2).  Finally, Aurora argues that Ms. Che's claim fails as she is unable to establish any actual damages flowing from the alleged TILA violations. (Def. Mot. at 22.)

In arguing for liability under § 1641(g), Ms. Che's contends that Aurora became her creditor when it obtained an assignment of her Deed of Trust and Promissory Note. (Compl. ¶¶ 20–24.)  Ms. Che argues that Aurora violated § 1641(g) when it failed to provide her with notice that Aurora had become her new creditor.  (Compl. ¶ 52.)  As a result of Aurora's alleged failure to notify her, Ms. Che contends that she lost her home to foreclosure.  (Compl. ¶ 31.) ("If Ms. Che was given proper notification of the transfer to the new creditor she could have tried to save her home prior to default.")

The Court finds that Aurora is properly considered a loan servicer rather than a creditor for purposes of the TILA.  With responsibility exclusive to the servicing of Ms. Che's loan, Aurora fits squarely within the definition of loan servicer.  (*See* Rice Decl. ¶

---

initially payable on the face of the evidence of indebtedness or, if there is no such evidence of indebtedness, by agreement. . . .").

11.)  For a loan servicer to be subject to liability for a violation of the TILA, the loan servicer must also own the subject loan.  *Horton v. Country Mortg. Services*, 2010 WL 55902 *3 (N.D.Ill 2010) (Lindberg, G.) ("TILA expressly disclaims any liability for mere servicers 'unless the servicer is or was the owner of the obligation.'")  Aurora does not currently own Ms. Che's loan, and has never owned Ms. Che's loan.  (Rice Decl. ¶¶ 10–11.)  Ms. Che argues that Aurora became her creditor when Aurora was assigned Ms. Che's Promissory Note and Deed of Trust.  (Compl. ¶¶ 20–24.)  But the assignment of Ms. Che's loan to Aurora, without Aurora owning her loan, is insufficient for liability under the TILA.  *Marks v. Ocwen Loan Servicing*, 2008 WL 344210 *2 (N.D.Cal. 2008) (Illston, S.) ("Although TILA provides that assignees of a loan may be liable for TILA violations, loan servicers are not liable under TILA as assignees unless the loan servicer owned the loan obligation at some point. . . .").

As Aurora correctly points out, Ms. Che has also failed to provide sufficient evidence of damages arising from the alleged violation of § 1641(g).  (Def. Mot. at 22–23.)  Ms. Che alleges that had Aurora provided her with the proper notice, she would have been able to prevent the foreclosure of her home.  (Compl. ¶ 31.)   These alleged damages are speculative rather than actual.  Where a creditor fails to comply with the requirements of § 1641(g), liability only exists for "any *actual damage* sustained by such person as a result of the failure."  15 U.S.C. § 1640(a)(1) (emphasis added); *see also Murphy v. Metrocities Mortg. LLC*, 2011 WL 5319917 *2 n.2 (C.D. Cal. 2011) ("The court notes that even if Plaintiff's TILA claim were timely, she has not alleged any actual damages resulting from Central Mortgage's failure to provide notice of the assignment."); *Beall v. Quality Loan Serv. Corp*, 2011 WL 1044148 *6 (S.D. Cal. 2011) (dismissing claim for failure to plead actual damages resulting from alleged TILA violation).  Ms. Che's theory that she could have saved her home but for Aurora's alleged failure to provide her with sufficient notice, disregards the fact that Ms. Che filed for bankruptcy and allowed her loan to go into default.

As a loan servicer who never owned Ms. Che's loan, Aurora is not liable for a violation of § 1641(g). What is more, Ms. Che is incapable of demonstrating any actual damages flowing from Aurora's alleged violation. Accordingly, Aurora has shown that no genuine issue of material fact exists concerning Aurora's liability under § 1641(g).

## B.  Alleged Violation of California's Unfair Competition Law

Ms. Che also has not presented any evidence to demonstrate that Aurora's conduct has violated California's UCL. California's UCL prohibits "any unlawful, unfair of fraudulent" business practices. Cal. Bus. & Prof. Code § 17200. Importantly, § 17200 borrows violations of other laws and treats them as unlawful practices that are independently actionable under the UCL. *Farmers Ins. Exchange v. Superior Court*, 2 Cal. 4th 377, 383 (1992). Ms. Che appears to assert that Aurora engaged in unlawful, unfair, or fraudulent business practices by violating § 1641(g) of the TILA (Compl. ¶ 61), making misrepresentations to the bankruptcy court (*Id.* ¶ 62), and committing fraud during the assignment of the Deed of Trust to Aurora (*Id.* ¶¶ 68–69). None of these assertions have merit.

First, Ms. Che's assertion that Aurora violated the TILA cannot form the basis of a UCL claim as Aurora is a loan servicer and not subject to liability under the TILA.

Second, any misrepresentations allegedly made to the bankruptcy court cannot form the basis of Ms. Che's UCL claim as such a claim would be barred by the litigation privilege. California Civil Code § 47(b) makes privileged those publications made during a judicial proceeding. This "absolute immunity attaches if the publication (1) was made in a judicial proceeding; (2) had some connection or logical relation to the action; (3) was made to achieve the objects of the litigation; and (4) involved litigants or other participants authorized by law." *Hagendorf v. Brown*, 699 F.2d 478, 480 (9th Cir. 1983).

Ms. Che alleges that on March 31, 2011, Aurora represented to the bankruptcy court that it held a deed of trust as to her property and that Aurora was the rightful creditor. (Compl. ¶ 63.)  Ms. Che further alleges that Aurora made these misrepresentations in a declaration and motion submitted to the bankruptcy court.  (Def. Opp'n. at 25.)  By the allegations made in Ms. Che's Complaint, Aurora is entitled to absolutely immunity for any alleged misrepresentations made to the bankruptcy court.

Third, Ms. Che has failed to establish that any fraud was committed during the assignment of the deed of trust to Aurora.  Ms. Che asserts, with no detail or evidentiary support, that the assignment of her Deed of Trust by MERS to Aurora was not done in the presence of the stated notary.[4]  (Compl. ¶ 24–25.)  Ms. Che simply states that since the notary on the assignment of her Deed of Trust was allegedly commissioned by the State of Nebraska, the notary never witnessed the execution of the assignment.  This is insufficient evidence to establish fraud in violation of the UCL.

///

///

---

[4] *See* Compl. ¶ 24–25 ("purporting [sic] robo-signer 'Jan Walsh' on behalf of MERS assigned the Deed of Trust over to Aurora on or about January 7, 2011. . . 'Irene Guerrero' notarized the document, but plaintiff is informed and believes and alleges thereon that 'Irene Guerroro' [sic] who was actually commissioned by the State of Nebraska was not the signatory and did not see robo-signer Jan Walsh execute this corporate assignment.")

1

**IV.  CONCLUSION**

2

3          For the foregoing reasons, Aurora has shown that no genuine issue of material fact

4   exists concerning Aurora's liability under either the TILA or UCL claim and that it is

5   entitled to judgment as a matter of law on those claims.  Accordingly, Aurora's converted

6   motion for summary judgment is GRANTED.

7

8

9          DATED:     March 15, 2012

10   _____

11                              CORMAC J. CARNEY

12                     UNITED STATES DISTRICT JUDGE

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28